IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUXOTTICA GROUP S.p.A.,
and OAKLEY, INC.,

               Plaintiffs,

         v.

ZHIQIANG ZHAO, *et al.*,

              Defendants.

Case No. 16 C 7988

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

There are a host of Motions before the Court: Defendant, Eddie Store's Motion to Dismiss for *Forum Non Conveniens*; Plaintiff's Motion for Summary Judgment; Eddie Store's Motion to Strike certain of Plaintiff's exhibits; Plaintiff's Motion to Dismiss Defendant's Counterclaims; and Eddie Store's Motion for Release of Funds.

## I.  BACKGROUND

The Plaintiffs, Luxottica Group S.p.A. and Oakley, Inc., (collectively, the "Plaintiffs") own numerous U.S. federal trademark registrations for one of the best known eyeware brands.  Defendant Eddiestore2008 ("Defendant") is a commercial internet store operating from The Peoples Republic of China. Luxottica and Oakley, an indirect, wholly-owned subsidiary of Luxottica, manufacture and distribute luxury and sports eyewear

under federally register trademarks. The Oakley brand symbolizes high quality and sells some of the most recognizable eyeware as well as other related products. Oakley has used its trademarks exclusively since 1975 and has extensively used and advertised the trademarks, spending in excess of ten million dollars annually. In their Complaint, Plaintiffs contend that Defendant has used its internet store to sell products over the internet to customers in the United States, and in Illinois. Specifically, Plaintiffs charge Defendant with selling counterfeit versions of its Oakley sunglass products. Defendant acknowledges that it sold at least 79 of its sunglass products but contends that it sold only unbranded sunglasses which did not bear any of Oakley trademarks. Defendant argues alternatively that, if it sold Oakley products, they were legitimate Oakley products.

Based on the forgoing, Plaintiffs have filed this action alleging claims relating to federal trademark infringement and counterfeiting, and seeking statutory damages and injunctive relief against Defendant. In August 2016, the Court granted Plaintiffs' Motion for a Preliminary Injunction, which among other provisions froze Defendant's PayPal account which contained the sum of approximately $459,000.00.

## II. ANALYSIS

### A. Defendant's Motion to Dismiss for
### *Forum Non Conveniens*

Defendant contends that this Court should dismiss this case in favor of having this litigation take place in the District People's Court of the Baiyun District, Guang Zhou City, and Guang Dong Province, China. Plaintiffs contend that Defendant has not established that a Chinese court would be an adequate forum for enforcing their United States trademark rights.

A defendant has a heavy burden in opposing a plaintiff's choice of forum. *Deb v. SIRVA, Inc.,* 832 F.3d 800, 810 (7th Cir. 2016). First, a defendant must submit evidence that the requested transfer court is both available and adequate. *Kamel v. Hill-Rom Co.,* 108 F.3d 799, 802 (7th Cir. 1997). Availability of a court is present if all parties are amenable to process and are within the forum's jurisdiction. A forum is adequate if the parties will not be deprived of all remedies or treated unfairly. Second, if the forum is available and adequate then the court weighs certain private and public interest factors. There is a strong presumption in favor of the plaintiff's choice of forum. *Zelinski v. Columbia 300 Inc.,* 335 F.3d 633, 643 (7th Cir. 2003). If it is determined that the proposed forum is not available or adequate, them the individual

and public factors need not be discussed. *Deb v. Sirva, Inc.,* 832 F.3d 800, 807 (7th Cir. 2016),

In arguing in favor of transfer, Defendant asserts through and affidavit of its Chinese counsel, that the Chinese District Court is an adequate forum to litigate Plaintiffs' trademark claims. However, as Plaintiffs point out, the cases relied upon by Defendant are merely citations to trademark infringement cases that were apparently decided in Chinese Courts. There were no written decisions supplied with the affidavit and there was no discussion about whether the Chinese court was applying Chinese law or United States law. There was no indication what the decisions were other than in general that injunctions were issued and damages awarded. Further the affidavit does not indicate one way or another whether a Chinese court would accept jurisdiction in this case which involves Italian companies seeking to enforce American Trademark law. *Deb* at 814. It is not enough to assert baldly that the proposed transferee forum is adequate. *Deb* at 811-12.

However it is also true that an adequate forum need not be a perfect forum. A remedy offered by the transferee forum is only inadequate if it amounts to no remedy at all. Mere inconvenience or unavailability of beneficial litigation procedures does not render a forum inadequate. *Satz v.*

*McDonnell Douglas Corporation,* 244 F.3d 1279, 1283 (11th Cir. 2004).   Since it may be that Defendant would be amenable to process in China, and the forum there might be adequate, the Court will discuss the public and private interests involved in this case.

First, of course, is Plaintiffs' choice of forum.   As Defendant points out, this is not as important a consideration as would be the case if the Plaintiffs were U.S. corporations. However, Plaintiffs still have a strong and powerful interest in litigating in the United States District Court here in the United States and Illinois.   As it acknowledges, defendant attempts to and does market its products to the citizens of the United States and of Illinois.   The United States is one of Plaintiffs' largest markets and plaintiff spends substantial sums of money establishing its name recognition in the United States.   Its trademark rights in the United States cannot be questioned.   It likewise has a strong interest in maintaining the quality of its products through preventing counterfeit products from flooding the United States market.   While being forced to litigate in the United States will obviously inconvenience Defendant and its witnesses, nevertheless, as Plaintiffs point out, Defendant is a sophisticated on-line merchant on the E-Bay platform which operates in the English

language, and by choosing to sell in the United States and Illinois via internet forums could easily foresee being hauled into court here. *Jos. Armando Bermudez & Co. v. Bermudez Int'l, Inc.,* 2000 U.S. Lexis 12354, *17 (S.D.N.Y. 2000). The U.S. trademark laws are primarily consumer protection laws so the United States and the State of Illinois have a stronger interest in seeing that their citizens have the protection of these laws than a foreign jurisdiction might have. Moreover, a United States court is certainly better able to understand the complexities of U.S. trademark law. *Piper Aircraft v. Reyno,* 454 U.S. 235, 241 n.6 (1981).

Therefore, since the public and private factors favor retaining the case here, the Motion to Dismiss for *Forum Non Conveniens* is denied.

### B. Defendant's Motion to Strike the Lewis Affidavit

Plaintiffs' Motion for Summary Judgment is straightforward: it owns the Oakley trademarks which are registered with the U.S. Patent and Trademark Office ("PTO") and are thus incontestable. Defendant does not dispute this and further admits that it does not possess a license from Plaintiffs to sell its eyeware and is not an authorized retail dealer of Oakley products. The Plaintiffs' evidence of counterfeiting consisted of the submission of certain screenshots of Defendant's website on EBay

in which Defendant offered for sale certain sunglass products that contained the Oakley trademarks on certain of the product accouterments, namely the eyeware lens and bag.

Defendant seeks to prevent summary judgment by moving to strike the screenshot evidence submitted by Plaintiffs on the ground that the screenshots had not been properly authenticated. Its argument is that the affiant who testified about the screenshots, Erin Lewis, Plaintiffs' Manager of Global Online Intellectual Property Protection, could not properly authenticate the screenshots. It cites as authority *United States v. Vayner,* F.3d 125, 131 (2nd Cir. 2014). In this case, the government attempted to introduce a Facebook page that was purported to be defendant's, and contained an alias that was alleged to be used by the defendant. The court ruled that it had not been properly authenticated. A police officer had taken a picture of the Facebook page off of a computer. The court held that there was insufficient evidence to show that the defendant had, in fact, created the page.

The Defendant also cites this Court's opinion in *Specht v. Google,* 758 F.Supp.2d 570, 580 (N.D. Ill. 2010), where the court held that screenshots of webpages obtained from Internet Archive, must be authenticated by a person from Internet Archive. The Internet Archive is a San Francisco-based digital

library which provides "universal access to all knowledge" including websites. *https://en.wikipedia.org/wiki/internet archive* (visited March 1, 2017). Failure to authenticate makes the information from Internet Archive, constitutes inadmissible hearsay. *AudiAG v. Shokan Coachworks, Inc.,* 592 F.Supp.2d 246, 278 (N.D.N.Y. 2008).

In this case, Ms. Lewis testified by affidavit that she took the screenshots in question and they demonstrated what she observed on the internet. She testified that she observed what purported to be Oakley products which she identified to be counterfeit Oakley eyeware products. She explained why she believed them to be counterfeit, giving eight characteristics of the Defendant's product that is not present on the legitimate Oakley product, namely, Oakley products do not include fabric tags, plastic clips, cleaning cloths, or cleaning cloths with the Oakley trademark, microfiber bags with printing on them, UV stickers on the lens, and that Oakley products have the logo in the proper position which the Defendant product did not. Plaintiffs argue, therefore, that they have provided sufficient authentication of the evidence concerning the screenshots to satisfy Rule 901(a).

Specifically, the screenshots disclose a webpages with the URL *ebay.com/usr/eddiestore2008.* Subsequent pages identify the

seller as "eddiestore2008" with a text watermark of "eddiestore2008." Screenshots produced by Defendant have the same text watermark as does Plaintiffs' images. The item for sale is "Outdoor Sport UV400 Protection Sunglasses Goggle Eyeware Lens w/Bag." The product listing also contained the same product number as has the product sold as listed in the Defendant's sales records, *i.e.,* Item Number 381505858364.

After briefing was complete (the Plaintiffs had filed their Reply brief) Defendant requested leave to file a Sur-reply because Plaintiffs had included a clarifying affidavit from Ms. Lewis. The Court granted Defendant leave to do so. Defendant has now filed its sur-reply, most of which seeks to provide additional arguments which could have been presented in its Reply brief and it predictably drew a Motion to Strike from Plaintiffs. However, with respect to its Motion to Strike the Lewis affidavit, which was the reason the Court authorized a Sur-reply, Defendant has provided an affidavit from its counsel, Konrad Sherinian, describing an investigation he conducted using certain internet sites, Terapeak.com, lapolicegear.com, and Pinterest. The result of his search, he contends, disclosed Oakley products for sale that included many of the features that Lewis claimed legitimate Oakley products did not have, such as a glass case, bags, and cleaning cloths containing Oakley marks.

What all three of these sites have in common is that they are photo sharing websites that are privately owned and operated, *www.terapeak.com, www.lapolicegear.com* and *www.pinterest.com.* They don't purport to be official sites of Plaintiffs. There is no indication that the products are legitimate Oakley products. In fact, if they fit Lewis' description of counterfeits, they may, in fact, be counterfeits. In any event there is no apparent tie-in between the ads produced by Defendant and Plaintiffs that exists between the ads produced by Plaintiffs and the Defendant. Because the Court is considering only the information relating to Attorney Sherinian's individual investigation, the Court does not believe it is necessary to strike the Sur-reply. The Plaintiffs' Motion to Strike is denied.

Defendant also challenged Ms. Lewis' determination that the items offered for sale on the screenshots were counterfeit. She testified in her affidavit that the products were counterfeit based on the eight characteristics previously discussed that are not present on legitimate Oakley products. Defendant argues that Lewis cannot competently testify to these facts because she was not designated as an expert. Lewis testified as to her background as an investigator of counterfeit merchandise and that she had access to Oakley business records concerning the

information contained in her affidavit. This is adequate to support her conclusion that the sunglasses offered for sale by Defendant were not legitimate Oakley sunglasses. A witness who testifies to what she observes is not necessarily an expert. Knowledge of a product's characteristics is not so esoteric that it would need an expert to explain to a jury. Rule 701, Federal Rules of Evidence, provides for lay opinion testimony relating to the appearance of things, provided it is based on the witness' perception. *Harris v. J.B. Robinson Jewelers,* 627 F.3d 235, 240-241 (6th Cir. 2010).

This therefore gets us back to the question as to whether the screenshots offered by Plaintiffs are sufficiently authenticated to support their Motion for Summary Judgment. The cases cited by Defendant to keep them out, all involved screenshots obtained from non-parties without sworn testimony supporting them. Here, Lewis testified by affidavit concerning personal observation of the screenshots. Also, the Plaintiffs in their Rule 56 Statement of Material Facts provided a description of the website including screenshots. Defendant in its response Plaintiffs' Rule 56 Statement of Facts merely denies selling, offering for sale, or advertising any product bearing a counterfeit version of the Oakley trademark. Rather than specifically taking issue with the screenshot evidence

relied upon by Plaintiffs in the Rule 56 Statement, Defendant denies that Plaintiffs submitted competent evidence. Defendant could have taken issue with the legitimacy of the screenshot evidence by claiming that the screenshots were phony and by producing actual screen shots from its Ebay site that would demonstrate what its website actually displayed. But they did not do so. Further, Defendant comes close to acknowledging that it violated Plaintiffs' trademarks by acknowledging it has had a policy against using a company's trademark unless it was actually dealing with the company's legitimate product. It states its current policy for dealing with complaints of counterfeiting, is to take down immediately the advertisement for which a credible complaint is made. Defendant's Operation Manager testified by affidavit that a "Mr. Zhong" was the "possible" source for the offending pictures and which was "created at some time between March 28, 2016 and June 26, 2016," and which was taken down on "July 28, 2016." Defendant further claims that it terminated Zhong on August 1, 2016 for violating Defendant's policy. Based on all the forgoing, the Court finds that the screenshots supporting Plaintiffs' Rule 56 Statement have been sufficiently authenticated and are admissible under Rule 901 and Defendant's Motion to Strike is denied.

## C. Plaintiffs' Motion for Summary Judgment

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without consent of the registrant, use[s]in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). Under the Uniform Deceptive Trade Practices Act of the State of Illinois, a defendant is liable for passing off goods of another, causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods, or causing likelihood of confusion of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

The gravamen of Plaintiffs' three claims is whether the public is likely to be deceived or confused by the similarity of the Plaintiffs' legitimate eyeware products and the products offered for sale by the Defendant. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992). The three specific requirements of a *prima facie* case of infringement are (1) a trademark distinctive enough to be worthy of protection; (2) a defendant's lack of authorization to use the mark; and (3) the use of the mark by defendant which threatens to create the likelihood of confusion as to the origin or sponsorship of a defendant's products. *Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F.Supp.2d 669, 684 (N.D.Ill. 2005). Section 43(a) of the Lanham Act and UDTPA claims has the same sale requirements. *Gimix, Inc., v. JS & A Group, Inc.,* 699 F.2d 901, 908 (7th Cir. 1983).

Therefore, in analyzing the evidence before the Court there is no disputing that the Plaintiffs have federally registered trademarks that are incontestable. There is likewise no dispute that the Defendant has not been authorized to use the Plaintiffs' marks. The issue before the Court is whether the Defendant did, in fact, offer to sell and/or sell counterfeit versions of Plaintiffs' products without authorization. Defendant takes two positions concerning this last point.

First, as has been argued above, Plaintiffs did not produce any competent evidence that the Defendant displayed counterfeit product on its website. The Court has already addressed this issue. The second point raised by Defendant is that perhaps the sunglasses offered for sale were actually Oakley sunglasses. Defendant cites the "first sale" doctrine which is a defense to a Lanham Act case and which provides that a purchaser who does no more than stock, display, and resell under the trademark of the producer is not in violation of the act. The problem with Defendant's position is that there is no evidence that this is what Defendant actually did. It speculates that Mr. Zhong may have been able to acquire some legitimate Oakley sunglasses. However, there is no evidence above the speculative level that he did so. There is no affidavit from Zhong to support this contention. Furthermore this evidence tends to corroborate Plaintiffs' position because Defendant fired Zhong for violating is policies against selling counterfeit goods. Therefore the Court finds that Defendant cannot rely upon the last sale defense. It also can be noted that Defendant was selling the eyeglasses at prices of between $11.70 and $11.80 per pair. Oakley sells its eyeware for well over $100.00 per pair. Thus, such a price differential should put a person on notice that the eyeware product is probably counterfeit.

Since the sole evidence is that Defendant violated Plaintiffs' trademark rights, Plaintiffs are entitled to summary judgment on each of their three claims: Count I, federal trademark infringement and counterfeiting; Count II, false designation of origin; and Count III, violation of the Illinois Uniform Deceptive Trade Practices Act.

### D. Damages

Under 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" or, in the case of willful infringement, "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." Although the Lanham Act permits a plaintiff to choose either actual or statutory damages, statutory damages are "most appropriate" when an infringer's nondisclosure makes actual damages uncertain. *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999).

Though § 1117(c) places a larger dollar range on possible statutory damages awards, the statute provides no guidance on how to select a figure within that range. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* No. 03 C 4986, 2004 U.S. Dist. LEXIS

22563, 2004 WL 2534378, at *4 (N.D. Ill. Nov. 8, 2004). Accordingly, "[c]ourts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c)." *Id.*

The Seventh Circuit's standard for the award of statutory damages in copyright infringement cases is set forth in *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir. 1991). Under *Chi-Boy,* "district courts enjoy wide discretion in awarding fees and may consider various factors such as [1] the difficulty or impossibility of proving actual damages, [2] the circumstances of the infringement, and [3] the efficacy of the damages as a deterrent to future copyright infringement." *Id.* at 1229-30 (citation and internal quotations omitted). Courts have also considered the value of a plaintiff's brand, "and the efforts taken to protect, promote, and enhance that brand." *Lorillard,* 2004 U.S. Dist. LEXIS 22563, 2004 WL 2534378, at *6. Ultimately, § 1117(c) looks to both "compensatory considerations" such as "actual losses and trademark value," as well as "punitive considerations" such as "deterrence of other infringers and redress of wrongful defense conduct." *Sara Lee,* 36 F.Supp.2d at 165; *see also, Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347 (7th Cir. 1994) (noting that statutory damages under § 1117(c) are not merely remedial but

serve an important public interest), *modified on reh'g in part*, 44 F.3d 579 (7th Cir. 1995).

Defendant, as might be expected, asks for the lowest possible statutory award and points to its stated policy against marketing in counterfeit goods and, while it denies dealing in counterfeit eyeware, nevertheless claims that if it did so it was the fault of an employee who was subsequently fired and the amount consisted of less than $1,000.00. It therefore argues that since it did not intend to deal in counterfeit eyeware it cannot be held liable for counterfeiting. However, as Plaintiffs point out, Plaintiffs are seeking statutory damages under 15 U.S.C. § 1117(c)(1) rather than § 1117(b). The latter requires a finding of intent while the former does not (unless the plaintiff is seeking enhanced damages pursuant § 1117(c)(2) which here it is not).

Plaintiffs are seeking $150,000.00 statutory damages from Defendant. The Court believes that this is more than is called for under the facts of the case. There are certain mitigating circumstances. According to Defendant's records, it sold fewer than 100 pairs of the counterfeit eyeware for a total of less than $1,000.00. Assuming its records are accurate, it was not a big player in sale of counterfeit Oakley products. It also appears to have a policy of not dealing in counterfeit goods.

In addition, Defendant's internet store on Ebay did not claim that the eyeware was Oakley, and a reasonable knowledgeable purchaser would probably realize that he could not expect to receive a legitimate Oakley product for the approximate $11.80 price charged by Defendant. Nevertheless, the counterfeiting took place over the internet which allows a counterfeiter to reach a vast customer base. Consequently, there are punitive considerations in order to deter the current violator and future violators. The Court has in similar cases awarded statutory damages in the amount of $50,000.00 per mark and since as far as the Court can tell, Defendant was selling only one type of eyeglasses. Consequently, the Court awards Plaintiffs the sum of $50,000.00 for statutory damages.

Plaintiffs also seek a permanent injunction pursuant to U.S.C. § 1116(a) which allows the Court to grant injunctions. A Plaintiff must demonstrate the following: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

Damage to goodwill of a trademark owner can constitute irreparable injury for which there is adequate remedy at law. *Re/Max N. Cent, Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001). The balance of hardships clearly favors Plaintiffs because all the Defendant has to do is to avoid infringement and counterfeiting, both of which are illegal. *Luxottica,* 2015 WL 3818622 at *3. Finally the public interest favors Plaintiffs because enforcement of trademark laws prevents consumer confusion. *Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000).

### E. Defendant's Counterclaim

As part of the preliminary injunction, the Court issued an Order seeking to freeze assets held in Defendant's accounts with PayPal, Inc. on the basis that Plaintiffs were seeking an accounting of profits as an alternative to statutory damages. Defendant has filed a Counterclaim in this case seeking damages as a result of the freezing of the PayPal account, which it refers to as an asset seizure, which it claims entitles it to damages under 15 U.S.C. § 1116(b)(11).

Plaintiffs have moved to dismiss the Counterclaim, arguing that § 1116(d)(11) does not apply for two reasons: first, the PayPal seizure was pursuant to an injunction issued under § 1116(a) and not § 1116(d); and, second, it did not seize the

PayPal account because it is under the control of the Court and not Plaintiffs.

The main basis for the Counterclaim is Defendant's contention that it did not violate Plaintiffs' trademark rights. Since the Court has ruled that Defendant did, in fact, violate Plaintiffs' trademarks the main underpinning of its Counterclaim has been removed. However, since the purpose of the asset freeze was to help preserve the equitable remedy of an accounting for profits, *Klipsch Group, Inc. v. Big Box Store Ltd.,* 2012 WL 5265727 at *3 (S.D. N. Y. Oct. 24, 2012), and since Plaintiffs are only seeking statutory damages there is no longer a reason to maintain the freeze on Defendant's PayPal account. *Klipsch Group* at *4. However, the right of a court to freeze assets to preserve the equitable remedy for an accounting is clear. *Id.* Here, when the Court granted the freeze, the Plaintiffs were requesting an accounting, so the freeze was appropriate. Now, however, the reason for the freeze is over and the PayPal account should be unfrozen. However, the Motion to Dismiss the Counterclaim of the Defendant is granted but its alternative request for a lift of the asset freeze is granted.

### F. Attorneys' Fees and Costs

Finally, Plaintiffs seek an award of attorneys' fees and costs. As the prevailing parties, Plaintiffs are entitled to

costs under Federal Rule of Civil Procedure 54(d)(1). In assessing damages under § 1117(a), courts "shall" award attorneys' fees, absent extenuating circumstances, in cases involving the intentional use of a counterfeit mark. 15 U.S.C. § 1117(b). An award of attorneys' fees is available where, as here, a plaintiff "opt[s] to receive statutory damages under section 1117(c). *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012); *accord, Coach, Inc. v. Treasure Box, Inc.,* No. 3:11CV468-PPS, 2014 U.S. Dist. LEXIS 28713, 2014 WL 888902, at *5 (N.D. Ind. Mar. 6. 2014). Accordingly, and in lights of Defendant's willful counterfeiting, Plaintiffs are awarded reasonable attorneys' fees and costs in an amount to be determined by the Court.

### III.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.  Defendant's Motion to Dismiss based on *forum non conveniens* is denied;

2.  Defendant's Motion to Strike the affidavit of Erin Lewis is denied;

3.  Plaintiffs' Motion for Summary Judgment is granted and the Court awards Plaintiffs the sum of $50,000.00 for statutory damages;

4.   Plaintiffs' Motion to Strike Defendant's Sur-reply is denied;

5.   Plaintiffs' Motion to Dismiss the Counterclaim of the Defendant is granted;

6.   Defendant's Motion to Release the funds in its PayPal account is granted; and

7.   Plaintiffs are awarded reasonable attorneys' fees and costs in an amount to be determined by the Court.


**IT IS SO ORDERED.**


_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: March 17, 2017